COUNTY OF BERGEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. EDWARD B. McCONNELL, ADMINISTRATIVE DIRECTOR OF THE COURTS; ABRAM M. VERMEULEN, DIRECTOR, DIVISION OF BUDGET AND ACCOUNTING AND AARON K. NEELD, STATE TREASURER, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 14, 1959—Decided December 17, 1959.

496

Before Judges GOLDMANN, CONFORD and HANEMAN.

*Mr. Milton T. Lasher* argued the cause for appellant and cross-respondent.

*Mr. Theodore I. Botter,* Deputy Attorney General argued the cause for respondents and cross-appellants (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Plaintiff brought an action in lieu of prerogative writs seeking recovery of 40% of the pension it had paid former County Court Judge Del Mar pursuant to the Veterans' Pension Act (*R. S.* 43:4–1 to 5, as amended *N. J. S. A.*), under which he retired, effective April 1, 1954. On cross-motions for summary judgment the Law Division judge ordered defendants to reimburse plaintiff 40% of all pension payments made for the period beginning January 1, 1958 and continuing thereafter. It denied plaintiff's claim for a 40% reimbursement of payments made prior to that date. Plaintiff appeals from the latter part of the judgment, and defendants from the former.

Judge Del Mar served as Bergen County Common Pleas judge and later as County Court judge, from June 16, 1932 until April 1, 1954, when he was retired under *N. J. S. A.* 43:4–1 on his application, after formal resolution adopted by the freeholder board. His salary at the time was $16,000 a year and he has been paid a pension at the rate of $8,000 annually. In 1954 plaintiff made a demand upon the Ad-

ministrative Director of the Courts, the State Director of the Division of Budget and Accounting, and the State Treasurer for a 40% reimbursement of pension payments made from April 1 to June 30, 1954. The demand was rejected on the basis of an opinion by the Attorney General to the effect that pension payments could not be regarded as salary and that the county was therefore not entitled to reimbursement under *N. J. S.* 2A:3–19, quoted below.

Plaintiff continued to pay the pension without further demand for reimbursement until April 30, 1958, when the Treasurer of Bergen County submitted an invoice to defendant Administrative Director of the Courts for a 40% refund of all pension payments down to March 31, 1958. This claim, too, was rejected in reliance upon the Attorney General's opinion of 1954.

The present action was instituted on July 30, 1958. After answer filed, the parties entered into a stipulation of facts, summarized above, in which defendants reserved all defenses. The counter-motions for summary judgment then followed. The trial court granted judgment to plaintiff covering payments from January 1, 1958 on the ground that since the State had reimbursed Bergen County for 40% of Judge Del Mar's salary during his active service, pursuant to *N. J. S.* 2A:3–19, it was only logical that the State bear 40% of his pension payments. The trial judge noted that in *Watt v. Mayor, etc., of Franklin,* 21 *N. J.* 274, 279 (1956), the late Chief Justice Vanderbilt had spoken of pensions to public officers as "some form of delayed wages or salary to compensate the employee during his declining years when he is apt to be less productive for his long and faithful service." Accordingly, he construed the provision in *N. J. S.* 2A:3–19 that the State reimburse for 40% of "salaries" to County Court judges, as including pensions within the meaning of the word "salaries." He further ruled that *R. R.* 4:88–15 and laches barred plaintiff from recovering 40% of pension payments made before January 1, 1958.

The problem presented is one of construing the two statutes here involved—the Veterans' Pension Act (*R. S.* 43:4–1 to 5, as amended) and *N. J. S.* 2A:3–19—to ascertain the legislative intent. *R. S.* 43:4–3 provides in part:

"A person so retired shall be entitled, for and during his natural life, to receive by way of pension, one-half of the compensation then being received by him for his service, which shall be paid in the same way and in the same installments as his compensation has been payable. * * *"

*N. J. S.* 2A:3–19 directs that

"The salaries of the judges of the several county courts shall be payable from county funds, by the treasurers of the respective counties, in equal semimonthly installments; provided, however, that 40 per cent of the salaries, which may be paid to June thirtieth in any year to the judges of the county court in any county by reason of the provisions of this article, shall be refunded to said county by the state treasurer on warrant of the director of the division of budget and accounting in the department of the treasury on vouchers certified or approved by the county treasurer and the administrative director of the courts."

The main basis of plaintiff's claim to reimbursement is the language found in *R. S.* 43:4–3, calling for a pension in the amount of one-half the compensation then being received by the veteran, "which shall be paid in the same way and in the same installments as his compensation has been payable." Since 40% of the judge's salary while he was in active service was reimbursed by the State, the argument is that pension payments must likewise be reimbursed to the extent of 40%. But this is to overlook the general purport of the statute. In enacting the Veterans' Pension Act the Legislature was considering all veterans, and not any particular class of employees or officers like county judges. What it obviously had in mind was the situation which ordinarily exists, where a public employee's salary is paid in its entirety by the governmental agency employing him, whether that agency be the State, a county, a municipality, or some other governmental agency. The language

upon which plaintiff places such strong reliance—"which shall be paid in the same way and in the same installments as his compensation has been payable"—must be considered in that light. It can therefore have no other meaning than that the manner and frequency of payment of salary, and all other matters incidental thereto, should be equally applicable to the payment of pension. We cannot read into this language a legislative intention to provide for the apportionment of pension payments in question merely because the judge's salary was apportioned to more than one governmental agency.

Resolution of the appeal must be found in a consideration of the language of *N. J. S.* 2*A*:3–19. Does the reference to "salaries" in that section in and of itself include pensions? We conclude it does not.

The source of *N. J. S.* 2*A*:3–19 is *L.* 1949, *c.* 257, which set up a schedule of salaries for County Court judges. Paragraph 3 of that act originally provided that 40% of the salaries paid such judges "by reason of the provisions of this act, shall be refunded * * *." In the revision of *Title* 2, "act" was changed to "article." *Title* 2A, *Chapter* 3, *Article* 2 (*N. J. S.* 2*A*:3–12 through 21) nowhere provides for pension payments to County Court judges. As noted, Judge Del Mar was retired under the Veterans' Pension Act, and not under any law specifically granting a pension to County Court judges.

Not only was it the express intention of the Legislature to limit refunds made under *L.* 1949, *c.* 257, to salaries, but it is entirely clear that reimbursement of pension payments was never in legislative contemplation. The act concerns itself only with the annual salaries of County Court judges in actual service. The same is true of *R. S.* 2:6–16, which was repealed by the 1949 act, and which dealt with the annual salaries of Common Pleas judges. (The jurisdiction of our former Courts of Common Pleas was acquired by the County Courts under the 1947 *Constitution* by virtue of *Art.* VI, *Sec.* IV, *par.* 1.) And see *N. J. S.* 2*A*:3–19.1

(*L.* 1955, *c.* 3), which provides that where a full-time County Court judge is assigned to sit temporarily without his county, in the Superior Court or in another County Court, the county for which he is appointed shall be entitled to a reimbursement of $60 a day; where he serves in the Superior Court the reimbursement is to be made by the State Treasurer, and where he sits in another County Court the reimbursement is to be made by the county treasurer of the county in which the services are rendered. See also *N. J. S.* 2*A* :3–20 (*L.* 1949, *c.* 298, as amended by *L.* 1953, *c.* 372), making similar provision for part-time county judges assigned to sit temporarily without the county, except that where a judge sits in another County Court, the $60 per day reimbursement is to be paid $40 by the county where the services are rendered and $20 by the State Treasurer; and *N. J. S.* 2*A* :3–21 (*L.* 1949, *c.* 302), authorizing additional compensation to a part-time county judge holding the County District Court, to be paid by the county in which the District Court is held.

A review of the statutes thus demonstrates that the county treasuries bore the full burden of paying county judge salaries until 1949. Thereafter, the counties continued to pay the salaries, but received reimbursement from the State in the amount of 40% under *N. J. S.* 2*A* :3–19, and in the amounts just mentioned when sitting without the county, under *N. J. S.* 2*A* :3–19.1 and 20.

Turning to existing legislation providing for judicial pensions, we find a difference in treatment between pensions for County Court judges and all other upper court judges. *Article* VI, *Section* VI, *paragraph* 3 of the 1947 *Constitution* required that Supreme Court justices and Superior Court judges "shall be retired upon attaining the age of seventy years," and that provision for pensioning such justices and judges "shall be made by law." (*Article* VI, *Section* VI, *paragraph* 5 provided that the Governor, after the procedure there called for had been carried out, might retire a justice or judge who was substantially incapacitated

so as to be prevented from performing his judicial duties, "on pension as may be provided by law.") Carrying out the constitutional mandate, the Legislature by L. 1948, c. 391, provided a pension for the justices in the Supreme Court and judges of the Superior Court. *N. J. S. A.* 43 :6–6.4 to 6.7. Pension payments were to be made by the State Treasurer out of state funds. *N. J. S. A.* 43 :6–6.9. However, no pension was provided for County Court judges under this act.

Pensions were provided for upper court judges, but not for judges of the Court of Common Pleas under *L.* 1908, *c.* 313, *R. S.* 43 :6–3, now repealed. It was not until 1937 that the statute was amended to provide a pension for Common Pleas judges, *L.* 1937, *c.* 179, § 1, but their pension, equal to half their annual salary, was to be paid by the county treasurer. By virtue of the provisions of the 1937 amendment and the preexisting law, all incorporated in *R. S.* 43 :6–6, now repealed, the pensions of all upper court judges were to be paid by the State Treasurer, but in the case of a Common Pleas judge the pension was to be paid by the county treasurer of the county for which he was appointed.

In every case where specific or special pension legislation referred either to judges of the former Court of Common Pleas, the County Court, or County District Court, we find that the Legislature directed that pension payments be made entirely out of county funds. See *L.* 1949, *c.* 181 (*N. J. S. A.* 43 :9–24) (certain Common Pleas judges); *L.* 1955, *c.* 10 (*N. J. S. A.* 43 :9–27.1) (certain judges who have served in the Criminal Judicial District Court, Common Pleas Court and County Court); and *L.* 1949, *c.* 178 (*N. J. S. A.* 43 :9–25 and 26) (certain District Court judges).

These statutes demonstrate in clearest fashion that wherever the Legislature has provided a pension for county judges, the county treasury was to bear the full burden of that pension. Even under the new Public Employees Retirement System Act, *L.* 1954, *c.* 84, as amended (*N. J. S. A.*

43:15A–1 *et seq.*), the counties must pay the full pension for a state employee-veteran who retires under the provisions of *R. S.* 43:4–1 to 3 (the Veterans' Pension Act), where such employee was paid by the county in part or in whole during his service. See *N. J. S. A.* 43:15A–79(*d*), which reads:

"Any State employee veteran, who is not eligible for membership, by reason of subsection (b) hereof, in the public employees' retirement system, and who is paid in whole or in part by any county or municipality or by any board, body, commission or agency of any county or municipality, shall not thereby be rendered ineligible for retirement benefits under sections 43:4–1, 43:4–2 and 43:4–3 of the Revised Statutes, and the responsibility for the payment of said retirement benefits shall be upon the county or municipality or such board, body, commission or agency which pays his salary."

 We are in complete agreement with defendants' basic contention that the long and well established legislative pattern which has placed the entire burden of pension payments for County Court judges on the county of their appointment, cannot be altered without a clear and unequivocal legislative direction. We will not impose State liability for a portion of the pension here involved by a resort to construction by implication, and even that not persuasive. Only the clearest warrant of law will justify the creation of such an obligation. The statutes are to be strictly construed in favor of the State. *Trustees of Public Schools v. Trenton,* 30 *N. J. Eq.* 667, 683–684 (*E. & A.* 1879), where it was said that it has long been settled that no statutory construction which would affect the government's rights should be allowed where the government is not expressly, or by necessary implication, included. And see *Curtis & Hill Gravel and Sand Co. v. State Highway Commission,* 91 *N. J. Eq.* 421, 433 (*Ch.* 1920); *Strobel Steel Co. v. State Highway Commission,* 120 *N. J. L.* 298, 302 (*E. & A.* 1938); *Klamath and Moadoc Tribes of Indians v. United States,* 296 *U. S.* 244, 250, 56 *S. Ct.* 212, 80 *L. Ed.* 202 (1935).

In the light of what we have said, it becomes unnecessary to consider whether or not plaintiff was barred from bringing this action by *R. R.* 4:88–15.

Accordingly, the judgment is reversed on defendants' cross-appeal as to that part granting reimbursement by the State to plaintiff of 40% of the pension payments made from January 1, 1958 on, and affirmed on plaintiff's appeal as to that part relating to pension payments made before 1958.